GRAND UNION TEA CO. *v.* LEWITSKY.

1. INJUNCTION — BILL — SUFFICIENCY — VIOLATION OF CONTRACT — ADEQUATE REMEDY AT LAW.

A bill to restrain the violation of a contract of employment which alleges that defendant is making use of the information gained through his employment with complainant to win away to a competitor complainant's customers, and that he is doing so by making fraudulent misrepresentations of fact, states a case as to which the remedy at law is inadequate.

2. STATUTES—CONSTRUCTION—AMENDATORY STATUTES—LIMITATION TO SCOPE OF ACT AMENDED.

Act No. 329, Pub. Acts 1905, invalidating contracts in restraint of trade, is an independent act with a title of its own, and is not limited in its operation by its section 7 to such contracts as are within the purview of Act No. 255, Pub. Acts 1899, for the prevention of trusts, monopolies, and combinations, though said section 7 declares Act No. 329 to be supplementary to, declaratory of, and in addition to, said Act No. 255.

3. CONSTITUTIONAL LAW—14th AMENDMENT—RIGHT TO CONTRACT —RESTRAINT OF TRADE.

Act No. 329, Pub. Acts 1905, invalidating agreements not to engage in a particular employment, except when ancillary to a sale of a business, does not conflict with the 14th Amendment of the Federal Constitution, by prohibiting the making of reasonable contracts for the protection of one's business.

4. CONTRACTS — EMPLOYMENT — RESTRAINT OF TRADE — ENFORCE-
ABILITY.

   A contract of employment by which the employé agrees not
   to engage in business in the employer's line for one year
   after leaving the employment is invalid as contrary to the
   express terms of Act No. 329, Pub. Acts 1905.

Appeal from Wayne; Mandell, J. Submitted April
16, 1908. (Docket No. 79.) Decided June 27, 1908.

Bill by the Grand Union Tea Company against Ignaoy
Lewitsky to restrain the violation of a contract of employ-
ment. From an order sustaining a demurrer to the bill,
complainant appeals. Affirmed.

*W. W. Wicker* (*John C. Donnelly*, of counsel), for
complainant.

*Frank C. Golden* and *Choate & Webster*, for de-
fendant.

BLAIR, J. On the 11th day of February, 1907, the
parties to this suit entered into the following agreement
in writing:

" Whereas, second party is desirous of securing em-
ployment with first party in the business of soliciting or-
ders for and delivering teas, coffees, spices, baking pow-
der, light groceries, etc., and such other goods as are
now or may be hereafter handled by first party at its
store at No. 140 Michigan avenue, Detroit, Mich., the
territory to be solicited and operated by second party to
be in the city of Detroit, Mich., and such other place or
places as may be mutually agreed upon.

" Therefore it is agreed that first party shall pay second
party a commission of 20 per cent. upon all goods deliv-
ered by him as, for and in lieu of salary; that second
party will devote his entire time and attention to said
business and, to the best of his ability, work for the bene-
fit of first party.

" Said second party agrees that he will not leave the
employ of first party without giving first party two
weeks' notice in writing of his intention so to leave, and
further agrees in consideration of the employment and

payment of commission herein provided that, should he leave the employ of first party, he will not engage in the business of soliciting orders for or delivering any teas, coffees, spices, baking powder, light groceries, etc., in said city of Detroit, Mich., or such other places as he may operate in under this agreement for a period of one year from and after the date of his so leaving said employment.

"Said second party further agrees that should he at any time leave the employ of first party or be discharged from such employ, he will, upon such leaving or discharge, turn over and deliver to said first party, at its store in Detroit, Mich., all goods, wares and merchandise and property of every name, kind and description in his possession pertaining to said business."

Defendant having left complainant's service and entered the employ of a rival company, complainant filed its bill of complaint, containing, among other allegations, the following:

"*Third.* Your orator further represents that its business is, to a large extent, conducted and carried on through its agents and representatives canvassing from house to house, in the city of Detroit, soliciting orders for such teas, coffees, spices, baking powder, light groceries, etc., and thereafter such agent delivering the goods to the respective customers so ordering; that there are a large number of your orator's customers in said city of Detroit, who are called upon by said agents periodically, to secure their orders and deliver the goods so ordered, and that each of said agents has a particular route or territory which he canvasses, and the trade of which he handles for your orator; that in the conduct of said business, each of said agents has a route which requires said agent to call upon the customers upon said route on particular days of each week, and that it requires one week for each of said agents to cover said route; that the names and addresses of the customers, together with the day of the week they should be called upon, are kept upon cards, each card containing the information for one customer, and upon which is placed the kind and quantity of goods ordered by each customer respectively; that in the establishment of such routes, your orator expended large sums of money in securing customers, and in securing the

necessary information placed upon such cards, and that such information is for the purpose of retaining the trade and good will of its customers, and that the same is a trade secret necessary to enable it to carry on its business, and that the cards, together with the information thereon, for each of said routes, is of great value, to wit: of the value of $500 and upwards.

"*Fourth.* Your orator further shows that the defendant herein, Ignaoy Lewitsky, entered the employ of your orator on or about the 11th day of February, 1907, under and pursuant to the terms of a written agreement, a copy of which is hereto attached, marked Exhibit A, reference to which is hereby prayed for greater certainty, and the same made a part hereof; that said defendant continued in the employ of your orator, soliciting orders upon a route or territory, and delivering the goods so ordered, in said city of Detroit, and continued so to do until the 1st day of October, 1907, at which time he voluntarily left the employ of your orator, and has not since been in its employ; that the business of said route aggregated approximately $85 per week; that at the time of the making of said contract, said defendant, Ignaoy Lewitsky, was, as your orator is informed and believes, and upon such information and belief charges the fact to be, unfamiliar with, and ignorant of such business, and that your orator from the said 11th day of February, 1907, until the 16th day of March, 1907, paid said Lewitsky a salary, in lieu of the commission provided for in said contract, and in addition thereto, your orator caused other of its agents, to whom your orator paid salaries, to canvass upon said prospective route, and secure customers and orders, and the expense thereof was paid by your orator; that your orator, in building up said route, and securing customers thereon, expended a large sum of money, to wit: The sum of $225 and upwards, and that all the information acquired by such other employés of your orator, were placed upon said cards of said route, and were turned over to said Lewitsky for his use as your orator's agent, in conducting the business on said route.

"*Fifth.* Your orator further shows that there are in said city of Detroit, other business houses, handling and selling the same character of goods and merchandise as are handled and sold by your orator, and who conduct their business in the same general manner as is conducted by your orator, by the canvassing and soliciting of orders from house to house.

"*Sixth.* Your orator further shows that on the 1st day of October, 1907, said defendant then being in the employ of your orator as aforesaid, left its employ, and thereafter and on the 4th day of November, A. D. 1907, in violation of the terms of his said agreement, Exhibit A, hereto attached, entered the employ of the Great Atlantic & Pacific Tea Company, a company engaged in the selling of the same character of goods and merchandise as are sold by your orator, and which conducts its business in the same general manner as your orator, as aforesaid, and on said 4th day of November, 1907, in violation of the terms of his said agreement, commenced canvassing and soliciting orders for teas, coffees, spices, baking powder, light groceries, etc., for said Great Atlantic & Pacific Tea Company, and since said 4th day of November has been, and now is, engaged in so canvassing and soliciting orders for such goods, wares and merchandise, and delivering the same to the customers, and endeavoring to induce the customers of your orator to discontinue buying goods from it, misrepresenting the facts in the matter, and stating, among other things, to such customers that the agent of your orator, who has since said defendant left your orator's employ canvassed and solicited orders upon the route and in the territory and from the customers theretofore called upon by said defendant, would not call upon them any more, but that he, said defendant, would call upon them and take their orders and deliver them goods, and has so represented to a large number of the customers of your orator in said city of Detroit; that said defendant, by reason of his employment as such salesman and canvasser, was by your orator entrusted with, and has become possessed of the facts shown by said cards, and the information relative to the names and addresses and wants of the customers upon said route, and the day that each of said customers should be called upon, and that said defendant has learned or copied the lists of said customers on said route and the other data and information connected with said trade, and is now in possession of such information and is using the same to the prejudice of your orator's rights and in the interest of said competitor of your orator.

"*Seventh.* Your orator further avers that by reason of the action of said defendant, and that if he be permitted to continue in such canvassing and soliciting of orders upon said route, or in the city of Detroit, and from said

customers of your orator in the interest of said competitor, or any competitor of your orator, a great and irreparable injury will be done to your orator, and that it will be damaged to the extent of five hundred ($500) dollars and upwards in the loss of profits and business to which it is lawfully entitled, and that said defendant is now seeking to divert and take away from your orator to the competitor aforesaid of your orator.

"*Eighth.* Your orator further shows that it is informed and believes, and upon such information and belief charges the fact to be, that said defendant intends to divulge the trade secrets aforesaid of your orator and the names and addresses of its customers on said route, together with the other knowledge and information acquired by him while in the employ of your orator as aforesaid.

"*Ninth.* Your orator further avers that said defendant is financially irresponsible and unable to answer in damages, and that your orator is without remedy in a court of law and is without remedy except in a court of equity.

"Wherefore your orator prays:    *    *    *

"*b.* That said defendant, Ignaoy Lewitsky, may, by the order of this court, be restrained from canvassing or soliciting orders for or delivering teas, coffees, spices, baking powder, light groceries, etc., in said city of Detroit, Wayne county, Michigan, and from soliciting orders or delivering goods to any of the customers of your orator in said city of Detroit, and that he be also restrained from in any manner revealing, showing or communicating the names or addresses of said customers of your orator upon said route, or any of them, or of any of its route or routes, to any person, firm, copartnership or corporation, or from divulging or communicating to any person or persons his knowledge of the dates upon which each of said customers should be called upon."

To this bill of complaint defendant demurred, for the following reasons:

"1. Because complainant has a full, complete and adequate remedy at law.

"2. Because the contract between complainant and defendant attached to the amended bill of complaint is against public policy, void and illegal.

"3. Because the contract which is the basis of the suit is void, illegal and against public policy.

"4. Because the injunction asked for would be illegal and void.

"5. Because there are not sufficient allegations in the bill outside of the contract that have no reference to the contract to entitle complainant to an injunction.

"6. Because, in the absence of a written contract, complainant is not entitled to an injunction against defendant.

"7. Because the only contract between complainant and defendant is void. It is just the same as though there was* no contract between complainant and defendant, and in the absence of a written contract complainant cannot restrain defendant from soliciting old customers."

The demurrer was sustained by the court and a decree entered dismissing the bill of complaint. From such decree, complainant appeals to this court.

The questions presented by the briefs for our determination are:

(1) Has complainant an adequate remedy at law?

(2) Does the contract fall within the provisions of Act No. 329 of the Public Acts of 1905, entitled:

" An act relative to agreements, contracts and combinations in restraint of trade or commerce."

(3) Is said act constitutional?

1. Counsel for defendant, in support of their demurrer as to this point, argue that as the contract in question is not a contract of sale, nor incidental or ancillary to nor in support of a contract of sale, but a mere contract of employment, requiring no special training, knowledge, skill or experience for its performance, the case is ruled by *Osius* v. *Hinchman*, 150 Mich. 603. A reading of the case cited in comparison with the bill of complaint in this case is sufficient to show the essential dissimilarity of the two cases. The bill of complaint in the present case not only alleges that the defendant is making use of the information gained through his employment to win away to a competitor complainant's customers, but is doing so by making fraudulent misrepresentations of fact. Under such a showing it cannot be said that the complainant has

an adequate remedy at law.    *Davies* v. *Racer,* 72 Hun (N. Y.), 43.

2.  Section 1 of Act No. 329 of the  Public Acts of 1905 provides that:

" All agreements and  contracts  by which any person, copartnership or corporation promises or agrees not to engage in  any  avocation,  employment,  pursuit, trade, profession or business, whether  reasonable  or  unreasonable, partial or  general, limited  or  unlimited, are hereby declared to be against public policy and illegal and void."

It is clear that the contract in  question comes  within the letter of the section and is  governed by its  terms, unless the provisions of section  7  limit  the  operation of the act to such contracts as are within the purview of Act No. 255 of the Public Acts of 1899 (aimed at  the  prevention of trusts, monopolies and combinations), as claimed  by complainant.    We do not  think the  act  of  1905  is to be so construed.    Section 7 reads as follows:

" This act is declared  to be  supplementary  to, and declaratory óf, and in addition to, Act No. 255 of the Public Acts of 1899, page 409."

The act is  not a  merely amendatory act  limited to the object embraced within the title of the original act, but is an independent act with a title of its own.    Whatever effect the act of 1905 may have upon the construction of the act of 1899, we would  not be  warranted in  wresting  the language of  section 1 from its  obvious meaning to make it conform to the title of the act of  1899, provided its provisions are reasonably within its own title, as we think they are.

3.  Complainant's counsel contend  that the statute violates the 14th  Amendment to the  Constitution of the United States, " in that it attempts to prohibit making of reasonable contracts" for the protection of one's business.

Section 1 of  the  act must be  read  in  connection with section 6, which provides:

" This act shall not apply to any contract mentioned in

this act nor in restraint of trade, where the only object of the restraint imposed by the contract is to protect the vendee or transferee of a trade, pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith and without any intent to create, build up, establish or maintain a monopoly."

Construed together, the two sections provide, in substance, that all agreements not to engage in any avocation, employment, pursuit, trade, profession, or business, except where the only object of the restraint is to protect the vendee or transferee of a trade, pursuit, avocation, profession or business or the good will thereof sold and transferred for a valuable consideration in good faith, shall be void as against public policy.

It will be observed that this statute exempts from its condemnation contracts incident or ancillary to the sale of a business, trade, or profession, which have frequently been sustained by this court. Similar statutes exist in other States, which appear to have been treated as valid exercises of legislative power by their courts. ·See *Prescott* v. *Bidwell*, 18 S. Dak. 64; *Merchants' Ad.-Sign Co.* v. *Sterling*, 124 Cal. 429 (46 L. R. A. 142); *Hulen* v. *Earel*, 13 Okla. 246; *Dodge Stationery Co.* v. *Dodge*, 145 Cal. 380.

The usual ground upon which contracts in restraint of trade are held to be invalid is that they are contrary to public policy.

" Public policy in the administration of the law by the court is essentially different from what may be public policy in the view of the legislature. With the legislature it may be, and often is, nothing more than expediency. The public policy which dictates the enactment of a law is determined by the wisdom of the legislature." *Enders* v. *Enders*, 164 Pa. 266 (27 L. R. A. 56).

Originally, at the common law all contracts in restraint of trade were held to be invalid as against public policy. But considerations of public policy vary with the times and the progress of civilization, and contracts in restraint

of trade have been very much limited by decisions of the courts and by statutes, and—

"A doctrine has been introduced in some of the later cases, both English and American, which may be called the doctrine of the reasonableness of the restraint." 9 Cyc. p. 529.

The history of the doctrine indicates that it has been, from the beginning, a proper subject for legislative consideration, and only in case of a clear violation of constitutional rights ought the courts to interfere with legislative discretion.

Limited as the statute is, we do not think it can be held to invade any constitutional right of the complainant under the 14th Amendment of the Federal Constitution. The contract must, therefore, be held to be invalid, and the decree is affirmed, with costs to defendant.

GRANT, C. J., and MONTGOMERY, CARPENTER, and McALVAY, JJ., concurred.