BAYLY, MARTIN & FAY, INC., an
Oklahoma Corporation, Appellant,

v.

Daniel D. PICKARD, Appellee.

No. 68700.

Supreme Court of Oklahoma.

Sept. 26, 1989.

William R. Grimm, Wm. Brad Heckenkemper, Tulsa, for appellant.

Jon R. Running, Tulsa, for appellee.

KAUGER, Justice.

On June 14, 1989, we granted certiorari to consider a question of first impression: whether a court may modify an otherwise void covenant not to compete so that the covenant constitutes a reasonable restraint on trade falling outside the forbidden parameters of 15 O.S.1981 § 217. Section 217 provides:

"Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by the next two sections, is to that extent void."

We find that covenants not to compete cannot be modified judicially to conform with the reasonable restrictions of § 217 if essential elements of a contract must be supplied.

## FACTS

In 1977, the appellee, Daniel D. Pickard (Pickard), was employed by Harlan Agents and Brokers, Inc., an affiliate of Harlan Holding Company (Harlan), an insurance company in which Pickard owned stock. Bayly, Martin & Fay Services, Inc. (BMF Services), an affiliate of the appellant, Bayly, Martin & Fay, Inc. (Bayly), purchased Harlan.

On December 5, 1977, Pickard sold his Harlan Stock to BMF Services and entered into a covenant not to compete. Two days later, Pickard executed an employment agreement with Harlan. This latter agreement restricted Pickard from dealing with any of Harlan's customers for three years after termination. It also denied Pickard access to any parties who became Harlan clients during his employment or to prospective clients contacted before his termination.

After BMF Services purchased Harlan, Bayly became Pickard's employer and the assignee of the covenant not to compete and the employment agreement. On November 15, 1984, Pickard executed a buy-sell agreement which contained a nonsolicitation of company business provision. This covenant was executed pursuant to Pickard's purchase of stock in BMF Services. Bayly fired Pickard on December 11, 1986; and Pickard sold his stock back to the company. Of the three agreements, only the covenant not to compete is limited geographically. It is operative in three states: Oklahoma, Texas, and Colorado.

On February 9, 1987, Bayly filed a petition in the district court alleging that Pickard had violated the terms of the employment and buy-sell agreements by accepting insurance business from Bayly's customers. Bayly sought injunctive relief to enjoin Pickard from violating the two agreements. The trial court issued a temporary restraining order on February 9, 1987; and it ordered a hearing on the application for temporary injunction for February 27,

1987. On February 18, 1987, Pickard filed a motion to vacate the restraining order. Five days later, he filed a motion for a protective order staying discovery until the trial court ruled on the legality of the agreements. Except for allowing Pickard's deposition to be taken, the trial court prohibited any discovery.

Pickard also filed an oral motion for summary judgment. His brief in support of the motion was filed on March 3, 1987. The trial court heard argument on the motion for summary judgment on March 13, 1987. On March 17, 1987, the trial court sustained Pickard's motion for summary judgment finding that the restrictive covenants were so broad, so comprehensive, so pervasive, and so contrary to public policy that they were void as a matter of law. On appeal, the Court of Appeals also found that the restrictive covenants were an overly broad restraint under 15 O.S.1981 § 217. However, the Court of Appeals reformed the agreements to restrict the geographical area of competition to Tulsa County and remanded with instructions.

TITLE 15 O.S.1981 § 217 ALLOWS REASONABLE RESTRICTIONS ON THE EXERCISE OF A LAWFUL PROFESSION, TRADE, OR BUSINESS; HOWEVER, THE CONTRACT MAY NOT BE JUDICIALLY MODIFIED IF ESSENTIAL ELEMENTS OF THE CONTRACT MUST BE PROVIDED TO BRING IT WITHIN THE RULE OF REASON.

Pickard asserts that the Court of Appeals erred in modifying the restrictive covenants because they are void pursuant to § 217. Although Bayly does not disagree with the Court of Appeals' determination that the restrictive covenants are an overly broad restraint under § 217, it argues that the Court of Appeals' modification of the agreements which restricted their operative effect to Tulsa County rendered their provisions reasonable and, therefore, enforceable.

Contracts in restraint of trade are void and unenforceable unless they fall within one of the two statutorily created exceptions to the general rule—sale of good will or dissolution of a partnership.[1] Although Bayly alleged that the good-will exception found in § 218 was applicable before both the trial court and the Court of Appeals, it's applicability is not argued by either of the parties on certiorari.[2] Even if the applicability of § 218 had been asserted, the miniscule amount of stock—.8%—sold back to BMF Services by Pickard is insufficient to support an argument that the goodwill exception to § 217 is applicable.[3]

A

REASONABLE RESTRICTIONS ARE ALLOWABLE UNDER 15 O.S.1981 § 217.

The majority rule is that unreasonable restraints are prohibited and that reason-

---

1. *Farren v. Autoviable Serv. Inc.*, 508 P.2d 646, 648 (Okla.1973); *Neal v. Pennsylvania Life Ins. Co.*, 480 P.2d 923–24 (Okla.1970); *Brottman v. Schela*, 52 N.D. 137, 202 N.W. 132, 134 (1925); Note, "Agency: Employment Contracts—Are Damage Clauses and Forfeitures Restraints on Competition?," 28 Okla.L.Rev. 554 (1975). The two statutory exceptions to 12 O.S.1981 § 217 are found in §§ 218 and 219.
Title 15 O.S.1981 § 218 provides:
"One who sells the good-will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city or part thereof, so long as the buyer, or any person deriving title to the good-will from him carries on a like business therein."
Title 15 O.S.1981 § 219 provides:

"Partners may, upon or in anticipation of a dissolution of the partnership, agree that none of them will carry on a similar business within the same city or town where the partnership business has been transacted, or within a specified part thereof."

2. See, *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 912 (Okla.1982); *Greene v. Circle Ins. Co.*, 557 P.2d 422–23 (Okla.1976).

3. This is not a situation like the one found in *Key v. Perkins*, 173 Okla. 99, 46 P.2d 530, 532 (1935), in which this Court held that the sale of an appreciable amount of stock, there 20%, could constitute a sale of good will within the meaning of § 218.

able restrictions will be enforced.[4] At common law, all contracts restraining trade were void. Later, the rules were relaxed, and contracts founded upon reasonable limitations of time and place were upheld.[5] In *E.S. Miller Laboratories, Inc. v. Griffin,* 200 Okla. 398, 194 P.2d 877, 879, 3 A.L.R.2d 519, 522 (1948), this Court considered the effect of the enactment of §§ 217–219 on the common law, and it determined that the common law rules which analyzed covenants not to compete based on their reasonableness did not survive the enactment of §§ 217–219.

However, this finding was eroded by *Tatum v. Colonial Life & Accident Ins. Co.,* 465 P.2d 448, 451 (Okla.1970), which held that a limited restraint on trade did not violate § 217. In both *Crown Paint Co. v.*

*Bankston,* 640 P.2d 948, 952 (Okla.1981), *cert. denied,* 455 U.S. 946, 102 S.Ct. 1444, 71 L.Ed.2d 659 (1982) and *Bd. of Regents v. Nat'l Collegiate Athletic Ass'n (NCAA),* 561 P.2d 499, 508, 85 A.L.R.3d 953, 967 (Okla.1977), we found that § 217 invalidated only unreasonable restraints on the exercise of trade. Although the rule of reason[6] which requires that in order to be valid, a covenant must be deemed reasonable by the court, had been incorporated as a matter of law into agreements falling within the parameters of 79 O.S.1981 § 1,[7] its application to § 217 was questionable before the *Crown Paint* and *NCAA* decisions.[8]

 Some states having legislation similar to §§ 217–219 do not subscribe to the rule of reason.[9] Nevertheless, this Court's

**4.** *American Eutectic Welding Alloy Sales Co. v. Rodriguez,* 480 F.2d 223, 226 (1st Cir.1973) (applying New York law); *Chapman & Drake v. Harrington,* 545 A.2d 645, 647 (Me.1988); *Appalachian Laboratories, Inc. v. Bostic,* 359 S.E.2d 614, 616 (W.Va.1987); *Harvest Ins. Agency, Inc. v. Inter–Ocean Ins. Co.,* 492 N.E.2d 686, 688 (Ind.1986); *Lamp v. American Prosthetics, Inc.,* 379 N.W.2d 909–10 (Iowa 1986); *Osage Glass, Inc. v. Donovan,* 693 S.W.2d 71, 74 (Mo.1985); *Follmer, Rudzewicz & Co., P.C. v. Kosco,* 420 Mich. 394, 362 N.W.2d 676, 684 (1984); *Central Adjustment Bureau, Inc. v. Ingram,* 678 S.W.2d 28, 32 (Tex.1984); *1st Am. Sys., Inc. v. Rezatto,* 311 N.W.2d 51, 59 (S.D.1981); *Foti v. Cook,* 220 Va. 800, 263 S.E.2d 430, 433 (1980); *Chuck Wagon Catering, Inc. v. Raduege,* 88 Wis.2d 740, 277 N.W.2d 787, 792 (1979); *John G. Bryant Co. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164, 1169 (1977); *Eastern Distrib. Co. v. Flynn,* 222 Kan. 666, 567 P.2d 1371, 1376 (1977); *Technicolor, Inc. v. Traeger,* 57 Hawaii 113, 551 P.2d 163, 170 (1976); *Raimonde v. Van Vlerah,* 71 Ohio Op. 12, 42 Ohio St.2d 21, 325 N.E.2d 544, 547 (1975); *Almers v. South Carolina Nat'l Bank,* 265 S.C. 48, 217 S.E.2d 135–36 (1975); *Stipp v. Wallace Plating, Inc.,* 96 Idaho 5, 523 P.2d 822–23 (1974); *Williams v. The Shrimp Boat, Inc.,* 229 Ga. 300, 191 S.E.2d 50–51 (1972); *Whitmyer Bros., Inc. v. Doyle,* 58 N.J. 25, 274 A.2d 577, 580 (1971); *Mason Corp. v. Kennedy,* 286 Ala. 639, 244 So.2d 585, 589 (1971); *Max Garelick, Inc. v. Leonardo,* 105 R.I. 142, 250 A.2d 354, 358 (1969); *Eutectic Welding Alloys Corp. v. West,* 281 Minn. 13, 160 N.W.2d 566, 571 (1968); *Redd Pest Control v. Heatherly,* 248 Miss. 34, 157 So.2d 133, 135 (1963); *Welcome Wagon Int'l, Inc. v. Pender,* 255 N.C. 244, 120 S.E.2d 739, 742 (1961); *Securities Acceptance Corp. v. Brown,* 171 Neb. 406, 106 N.W.2d 456, 463 (1960); *Lassen v. Benton,* 86 Ariz. 323, 346 P.2d 137, 140 (1959), *modified,* 87 Ariz. 72, 347 P.2d 1012 (1959) (Modification did not affect the issue of

reasonableness.); *Szabo Food Serv., Inc. v. County,* 160 Ill.App.3d 845, 112 Ill.Dec. 266, 513 N.E.2d 875, 877 (1987).

**5.** *Vulcan Powder Co. v. Hercules Powder Co.,* 96 Cal. 510, 31 P. 581 (1892).

**6.** *Jewel Box Stores Corp. v. Morrow,* 272 N.C. 659, 158 S.E.2d 840, 843 (1968); Annot., "Enforceability of Restrictive Covenant, Ancillary to Employment Contract, as Affected by Territorial Extent of Restriction," 43 A.L.R.2d 94, 116 (1955).

**7.** See, *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 386, 76 S.Ct. 994, 1002, 100 L.Ed. 1264, 1276 (1955); *United States v. American Tobacco Co.,* 221 U.S. 106, 181, 31 S.Ct. 632, 648, 55 L.Ed. 663, 694 (1910); *Standard Oil Co. v. United States,* 221 U.S. 1, 64, 31 S.Ct. 502, 517, 55 L.Ed. 619, 646 (1910); *Teleco, Inc. v. Ford Indus., Inc.,* 587 P.2d 1360, 1363 (Okla.1978). Title 79 O.S.1981 § 1 provides:

"Every act, agreement, contract, or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within this state is hereby declared to be against public policy and illegal."

**8.** Note, "Survey of the Law: V. The Meaning of Restraint from Exercising a Lawful Profession, Trade, Business & Restraint of Trade Under the Oklahoma Statutes," 4 Okla. City U.L.Rev. 208, 210 (1979). See also, the Restatement of Contracts §§ 513–15 (1932), acknowledging in § 515 that the rule of reason may be altered by statute.

**9.** *Muggill v. Reuben H. Donnelley Corp.,* 62 Cal.2d 239, 42 Cal.Rptr. 107, 398 P.2d 147, 149, 18 A.L.R.3d 1241, 1245 (1965); *Marine Forward-*

rulings in *Crown Paint* and *NCAA* align Oklahoma with jurisdictions which have similar legislation and which weigh the reasonableness of restrictions to determine their enforceability.[10] Section 217 prohibits only unreasonable restraints on the exercise of a lawful professsion, trade, or business.

## B

### COVENANTS NOT TO COMPETE MAY NOT BE MODIFIED JUDICIALLY TO BRING THE CONTRACT WITHIN THE RULE OF REASON IF THE COURT WOULD BE REQUIRED TO SUPPLY ESSENTIAL CONTRACTUAL TERMS.

There is a division of authority concerning whether a restrictive covenant not to compete is void in toto,[11] or whether it may be judicially modified.[12] Modification is allowed in jurisdictions which enforce reasonable agreements.[13] The modification principle allows courts to escape the rule of arbitrary refusal to enforce a covenant and serves to protect legitimate interests of the parties or the public.[14] However, not all jurisdictions recognizing that reasonable restrictions are enforceable will rewrite the parties' agreements. Instead, these courts find that if a covenant not to compete contains an illegal or unenforceable clause, the whole covenant fails.[15] Other courts while recognizing that judicial modification is appropriate refuse to modify agreements if the elements of the contract are so lacking that the court would be required to provide essential elements of the agreement.[16] Courts are hesitant to rewrite contracts especially where no justification exists for

*ing & Shipping Co. v. Barone,* 154 So.2d 528, 530 (La.Ct.App.1963). See also, *Fort Smith Paper Co. v. Sadler Paper Co.,* 482 F.Supp. 355, 357 (E.D.Okla.1979); *Grand Union Tea Co. v. Lewitsky,* 153 Mich. 244, 116 N.W. 1090, 1094 (1908); Annot., "Statutes Prohibiting Restraint on Profession, Trade, or Business as Applicable to Restrictions in Employment or Agency Contracts," 3 A.L.R.2d 522 (1940).

**10.** *Calhoun v. Brendle, Inc.,* 502 So.2d 689, 691 (Ala.1986).

**11.** However, the sale of good will is treated differently. Section 218 allows parties selling good will to agree not to compete within a specified county or city for as long as the purchaser carries on a similar business. Judicial modification of contracts falling within the goodwill exception to § 217 has long been the norm. Modification has been allowed when duration and geographical limitations were found unreasonable and in violation of § 218. *Clare v. Palmer,* 201 Okla. 186, 203 P.2d 426, 429, 45 A.L.R.2d 71, 75 (1949); *Herrington v. Hackler,* 181 Okla. 396, 74 P.2d 388, 391 (1937); *Hartman v. Everett,* 158 Okla. 29, 12 P.2d 543–44 (1932). Modification is justified on the basis that § 218 only invalidates any excess restrictions and not the statutorily approved limitations. *Wesley v. Chandler,* 152 Okla. 22, 3 P.2d 720, 723 (1931).

**12.** Modification has been allowed in the following cases: *LCI Communications, Inc. v. Wilson,* 700 F.Supp. 1390, 1397 (W.D.Pa.1988) (applying Ohio law); *Home Gas Corp. v. DeBlois Oil Co.,* 691 F.Supp. 567, 574 (D.R.I.1987); *Kershaw v.*

*Knox Kershaw, Inc.* 523 So.2d 351, 359 (Ala. 1988); *Sheppard v. Blackstock Lumber Co.,* 85 Wash.2d 929, 540 P.2d 1373, 1377 (1975); *Lavey v. Edwards,* 264 Or. 331, 505 P.2d 342, 344 (1973); *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 952 (1960); *Bell Fuel Corp. v. Cattolico,* 375 Pa.Super. 238, 544 A.2d 450, 458–59 (1988); *Orkin Exterminating Co. v. Martin,* 516 So.2d 970, 971–72 (Fla.Dist.Ct. App.1987); *House of Vision, Inc. v. Hiyane,* 58 Ill.App.2d 431, 208 N.E.2d 390, 395–96 (1965). Courts have refused to enforce or reform overly broad restrictions in the following cases: *Welcome Wagon, Inc. v. Morris,* 224 F.2d 693, 701 (4th Cir.1955); *Rector–Phillips–Morse, Inc. v. Vroman,* 253 Ark. 750, 489 S.W.2d 1, 4, 61 A.L.R.3d 391, 394 (1973). See also, Annot., "Enforceability, Insofar as Restrictions would be Reasonable, of Contract Containing Unreasonable Restrictions on Competition," 61 A.L.R.3d 397, 407, 418 (1975).

**13.** *Nassau Sports v. Peters,* 352 F.Supp. 870, 877 (E.D.N.Y.1972); *Insurance Center, Inc. v. Taylor,* 94 Idaho 896, 499 P.2d 1252, 1256 (1972); *Harry Blackwood, Inc. v. Caputo,* 290 Pa.Super. 140, 434 A.2d 169, 171 (1981).

**14.** *Insurance Center, Inc. v. Taylor,* see note 13, 499 P.2d at 1255, supra.

**15.** *Central Specialties Co. v. Schaefer,* 318 F.Supp. 855, 859 (N.D.Ill.1970); *Wiley v. Royal Cup, Inc.,* 258 Ga. 357, 370 S.E.2d 744, 746 (1988); *Streiff v. American Family Mut. Ins. Co.,* 118 Wis.2d 602, 348 N.W.2d 505, 512 (1984).

**16.** See, *Trilog Assoc. v. Famularo,* 455 Pa. 243, 314 A.2d 287, 294 (1974); *H. & R. Block, Inc. v. Lovelace,* 208 Kan. 538, 493 P.2d 205, 210, 50

the restriction imposed.[17]

■ Because § 217 prohibits only those contracts in unreasonable restraint of trade, judicial modification is justified if the contractual defect can be cured by imposition of reasonable limitations concerning the activities embraced, time, or geographical limitations. However, the Court of Appeals' imposition of a reasonable geographical limitation on the operation of the agreements did not cure: 1) the defects relating to accepting or servicing of clients;[18] 2) the agreements restricting Pickard from competing in lines of business unrelated to the insurance industry; or 3) those restricting the sale of any kind of insurance to Bayly clients. The contractual provisions relating to the activities embraced would have to be rewritten to cure these defects. Here, there is more amiss than can be reformed effectively.[19]

■ The Covenant Not to Compete[20] provides that Pickard will not "solicit, accept for service, or receive any commissions, fees or income attributable to the sale of, insurance business of any kind or character ..." from any party who was a

A.L.R.3d 730, 738 (1972); *Insurance Center, Inc. v. Taylor,* note 13, supra.

17. *H. & R. Block, Inc. v. Lovelace,* see note 16, 493 P.2d at 212, supra.

18. See, *1st Am. Systems, Inc. v. Rezatto,* note 4, supra; *Morris v. Harris,* 127 Cal.App.2d 476, 274 P.2d 22–23 (1954); Annot., "Provisions of Insurance Company's Contract with Independent Insurance Agent Restricting Competitive Placements by Agent as Illegal Restraint of Trade under State Law," 42 A.L.R.4th 1072, 1109 (1985).

19. The dissent characterizes the issue which must be addressed as whether partial enforcement of the three provisions is possible without injury to the public and undue hardship to the parties. It then characterizes the required analysis as not requiring the making of a new contract but as merely giving effect to the restrictive covenants by enforcing their reasonable terms. The terms restricting Pickard's activities contain no reasonable provisions. In order to enforce those portions of the three covenants, the Court would have to limit: 1) the parties the covenants encompass, i.e. to those parties which are actually Bayly clients; 2) the kinds of insurance Pickard is restricted from selling to those forms of insurance sold by Bayly; 3) solicitation rather than acceptance of insurance from Bayly clients; and 4) operation of the covenants to participation in the insurance field rather than to any other business either Bayly or NBS might enter. In effect, such a broad restriction on the covenants as drafted would result in the Court's rewriting the contract for the parties. In addition, the redrafting of the activities portion of the three contracts would still leave two agreements which imposed no geographical limitation and one limiting activities to a three state area. The Court would have to rewrite the activities provisions of the three contracts and limit operation of the contracts as rewritten to a reasonable geographical area before enforcing the agreements.

20. The relevant portion of the Covenant Not to Compete provides:

"... For the period beginning on the date of the closing of the Purchase Agreement and ending on the third anniversary of the date on which Covenantor ceases to be employed by any member of the NBS Group, (i) Covenantor shall not (except as an employee of any member of the NBS Group), directly or indirectly, on his own behalf or as an employee, agent, owner, officer, director, partner, consultant, advisor or promoter of any corporation, partnership, joint venture, agency or any other form of business enterprise, or on behalf of any other insurer, insurance agent or broker, solicit, accept or service, or receive any commissions, fees or income attributable to the sale of, insurance business of any kind or character from any person, corporation, partnership, joint venture or other entity which was an account, customer, or client of any member of the NBS Group at any time within three years prior to the termination of Covenantor's employment with the NBS Group; (ii) nor shall Covenantor, during said period, solicit or perform, or accept any commissions, fees or income for the performance of, any service of a type performed by any member of the NBS Group for any person, corporation, partnership, joint venture or other entity described in the preceding clause; (iii) nor shall Covenantor, during said period, solicit or induce any account, customer or client of any member of the NBS Group to cease placing all or any part of its insurance business with the NBS Group or to divert all or any part of such business to any other person, corporation, partnership, joint venture or any other business enterprise other than a member of the NBS Group ..."

If valid, the provision would prevent Bayly from doing business with clients of the NBS Group who were customers during the last three years of his employment and with any parties who are clients of NBS for three years following his termination. The provision effectively covers a span of 6 years. This provision is the only covenant containing a geographical limitation.

client of the NBS group [21] at any time within three years of termination of employment. The provision also restricts Pickard from performing any other service rendered by any member of the NBS Group for the same time period and covering the same parties.

The Employment Agreement [22] forbids the solicitation or acceptance of insurance business from current clients of Harlan, but the provision is much broader than the one found within the Covenant Not to Compete. The Employment Agreement not only restricts Pickard's activities with current clients; it also covers parties becoming clients during Pickard's employment and any prospective insurance customers contacted while Pickard was employed with the company. The Buy–Sell Agreement [23] is similar to the Covenant Not to Compete because it proscribes the sale of any kind of insurance to BMF customers, and it restricts Pickard's participation in other fields in which the BMF Group may participate regardless if it is related to the sale of insurance.

Neither the Covenant Not to Compete nor the Buy–Sell Agreement stop at restricting the sale of the same type of insurance as that sold by Bayly to its existing clients as did the provision in *Tatum*. *These contracts absolutely forbid the sale of insurance of any kind to Bayly affiliates clients.* Although as an employee, Pickard participated only in the insurance industry, if upheld, the Buy–Sell Agreement would restrict his participation in any business in which Bayly might become involved. The restriction in the Employment Agreement is not limited to forbidding the sale of insurance to parties who are clients of Bayly during the three year period following termination of employment. It covers any parties becoming clients during Pickard's nine years of employment with Bayly, and prospective clients contacted prior to Pickard's termination.

It covers the states of Oklahoma, Texas and Colorado.

21. Because the Covenant Not to Compete was executed in conjunction with Pickard's sale of stock to BMF Services, we presume that the NBS Group are Harlan affiliates purchased by BMF Services.

22. The Employment Agreement provides in pertinent part:
"... While Employee is an employee of Harlan and for a period of three (3) years following the date of the voluntary or involuntary termination of Employee's employment hereunder, the Employee specifically agrees that he or she will not (except as an employee of Harlan or a company affiliated with or owned, operated or supervised by Harlan) solicit, accept, nor service, directly or indirectly, as an insurance solicitor, insurance agent, insurance broker, or otherwise, for Employee's account or the account of any other agent, or broker, or insurer, either as an officer, director, stockholder, owner, partner, employee, promoter, consultant, manager or otherwise, any insurance business of any kind or character from any person, firm, corporation or other entity who is now, or while the Employee is employed by Harlan becomes, a customer of Harlan (or a company or agency affiliated with or owned, operated or supervised by Harlan) or from any prospective insurance customer to whom Harlan, (or a company or agency affiliated with or owned, operated or supervised by Harlan) has made proposals while the Employee is employed by Harlan ..."
If valid this provision would not only restrict Pickard from dealing with any of Harlan's customers for three years after termination but would also deny him access to any parties who became clients of Harlan during his employment—a period of 9 years—and to those prospective clients contacted by Harlan prior to Pickard's termination.

23. The Buy–Sell Agreement provides in pertinent part:
"... Each Employee Shareholder expressly covenants and agrees that from the date of the Employee Shareholder's termination of employment with the BMF Group until the third anniversary of the date on which such employment terminates, he will not, acting alone or in conjunction with others, directly or indirectly, except for any activities performed on behalf of any member of the BMF Group, (i) solicit, accept or service, or receive any commissions, fees or income from or in respect of, insurance business of any kind or character or other types of business conducted by the BMF Group, related or unrelated thereto, from any person or business which is an account, customer or client of any member of the BMF Group or induce or attempt to influence any such persons or business to curtail or cancel their business or relationship with any member of the BMF Group; or (ii) induce or attempt to influence any employee of any member of the BMF Group to terminate

■ It is conceivable that the provision could restrict Pickard from selling insurance to parties who became clients during his tenure with the company but who have since ceased to do business with Bayly, or with potential insurance clients contacted by Bayly but who never became its clients. In addition, all three provisions not only restrict the solicitation of insurance business but also deny Pickard the right to accept for service Bayly clients that may contact him for the purchase of insurance. Where no active solicitation has occurred, restraint on an insurance agent's dealings with former clients is unenforceable.[24]

Even those courts allowing modification refuse to supply essential elements in covenants in order to make them reasonable.[25] The buy-sell agreement and the covenant not to compete contain provisions recognizing that the laws and public policies of the various states may differ and that portions of the covenants may be unenforceable in some jurisdictions. These provisions provide that the covenants may be altered or modified to conform with applicable state law. Bayly asserts that these provisions afford Oklahoma Courts the authority to modify the covenants.

Although the provisions may express the intent of the parties, that intent is not considered if a statute expressly declares certain contracts void.[26] Unlawful contracts, in derogation of our statutes, will not be enforced by the courts.[27] The insertion of a provision in the three agreements permitting modification does not alter the fact that the Court would have to rewrite the contracts to make them reasonable.

**CONCLUSION**

Courts cannot supply material terms of a contract or read in terms not contained therein.[28] The Court of Appeals' imposition of a reasonable geographical limitation limiting operation of the three agreements to Tulsa County did not cure the other material defects of the three provisions. Because these contracts would require material judicial alteration and the provision of essential terms in order to come within the rule of reason, the Court of Appeals erred in modifying the contract.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; TRIAL COURT AFFIRMED.

HARGRAVE, C.J., and SIMMS, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, V.C.J., and LAVENDER, J., concur in part, dissent in part.

HODGES, J., dissents.

OPALA, Vice Chief Justice, with whom LAVENDER, Justice, joins, concurring in part and dissenting in part.

The court pronounces today that because the restrictive noncompetitive covenants [covenants] in the three contracts under review are overly broad and would require material judicial alteration to bring them within the rule of reason, they are void and unenforceable. The court notes that covenants in restraint of trade may be modified by imposition of reasonable time, geographical and activity limitations, but holds

---

his or her employment with such member ..."

24. See, *1st Am. Systems, Inc. v. Rezatto*, note 4, supra; *Morris v. Harris*, see note 18, supra; Annot., "Provisions of Insurance Company's Contract with Independent Insurance Agent Restricting Competitive Placements by Agent as Illegal Restraint of Trade under State Law," see note 18, supra.

25. *Medline Indus., Inc. v. Grubb*, 670 F.Supp. 831, 837 (N.D.Ill.1987); *Lee/O'Keefe Ins. Agency, Inc. v. Ferega*, 163 Ill.App.3d 997, 114 Ill.Dec. 919, 516 N.E.2d 1313, 1319 (1987).

26. *Coursey v. Fairchild*, 436 P.2d 35, 40 (Okla. 1967). Title 15 O.S.1981 § 211 provides:
"Those contracts are unlawful which are:
 1. Contrary to an express provision of law;
 2. Contrary to the policy of express law, though not expressly prohibited; or,
 3. Otherwise contrary to good morals."

27. *Haggerty v. Key*, 100 Okla. 238, 229 P. 548, 552 (1924).

28. *King–Stevenson Gas & Oil Co. v. Texam Oil Corp.*, 466 P.2d 950, 954 (Okla.1970); *Cities Serv. Oil Co. v. Geolograph Co.*, 208 Okla. 179, 254 P.2d 775, 781 (1953).

that defects in the provisions relating to (a) *accepting or servicing clients,* (b) *restricting the promisor [Pickard] from competing in lines of business unrelated to the insurance field* and (c) *restricting the sale of any kind of insurance* to the employer's clients cannot be cured by judicial circumscription of these limitations. I must recede from the view that the contracts in suit cannot be judicially modified.

The enforcement of covenants not to compete is subject to the rule of "reasonableness" [1] which clearly favors some form of judicial modification.[2] A restraint is *deemed reasonable only* if it (1) is no greater than is required for the employer's protection, (2) does not impose undue hardship on the employee and (3) is not injurious to the public.[3] The court must balance these competing interests to determine the reasonableness of the noncompetitive covenant. The inquiry for gauging the re-

straint's reasonableness generally focuses on three factors—the types of activities embraced, the geographical area and the span of time.[4]

The infirmities asserted in the contracts under review relate solely to the first factor—the nature of the business activity affected by the restraint and the classes of persons with whom Pickard has promised not to do business. When a restrictive covenant is found to be unreasonable, the court must decide *whether a lesser degree of restraint can be fashioned without impairing the public interest and causing the parties undue hardship.*[5] This balancing of equities for assessment of the appropriate limits does *not* result in making a new contract for the parties; rather, its purpose is to give effect to the covenants *by enforcing their reasonable terms.*[6]

1. See, e.g., *New Haven Tobacco Co. v. Perrelli,* 11 Conn.App. 636, 528 A.2d 865, 867 [1987]; *Central Adjustment Bureau, Inc. v. Ingram,* 678 S.W.2d 28, 37 [Tenn.1984]; *Reddy v. Community Health Foundation of Man,* 298 S.E.2d 906, 910–911 [W.Va.1982]; *Ehlers v. Iowa Warehouse Company,* 188 N.W.2d 368, 370–374 [Iowa 1971], modified on other grounds, 190 N.W.2d 413 [Iowa 1971]; *Solari Industries, Inc. v. Malady,* 55 N.J. 571, 264 A.2d 53, 61 [1970]; *Raimonde v. Van Vlerah,* 42 Ohio St.2d 21, 325 N.E.2d 544, 546–547 [1975]; see also Aspelund, Employee Noncompetition Law, § 6.04 et seq., pgs. 6–48 through 6–166 [1987].

2. *Central Adjustment Bureau, Inc. v. Ingram, supra* note 1 at 36; *Ehlers v. Iowa Warehouse Company, supra* note 1, 188 N.W.2d at 370–374; *Solari Industries, Inc. v. Malady, supra* note 1 at 56; see also Fisher, Post Employment Restraints: An Analysis of Theories of Enforcement, and a Suggested Supplement to the Covenant Not to Compete, 17 Tulsa L.J. 155, 156–57 [1981]; Aspelund, *supra* note 1 at § 8.01, p. 8–3, where the author—citing to *Fisher, supra,* and Restatement (Second) of Contracts § 184, comment b, illustrations 2, 3 [1981]—observes that the current trend favors allowing *complete modification of restrictive noncompetitive covenants.*

3. *Ehlers v. Iowa Warehouse Company, supra* note 1 at 370; *Central Adjustment Bureau, Inc. v. Ingram, supra* note 1 at 37.

4. *Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 351 A.2d 207, 212 [1976]; *Raimonde v. Van Vlerah, supra* note 1, 325 N.E.2d at 547; *Westec Sec. Services, Inc. v. Westinghouse Elec.,* 538 F.Supp. 108, 122–123 [E.D.Penn.1982]; 14 Willi-

ston, Contracts, § 1647B at 286–288 [1972]. In the Restatement (Second) of Contracts § 188, Comment d, it is stated:

"The extent of the restraint is a critical factor in determining its reasonableness. The extent *may be limited* in three ways: by *type of activity,* by geographical area, and by time. If the promise proscribes *types of activity* more extensive than necessary to protect those engaged in by the promisee, it goes beyond what is necessary to protect his legitimate interests and is unreasonable.... *What limits as to activity,* geographical area, and time *are appropriate in a particular case depends on all the circumstances."* [Emphasis added.]

5. *Ceresia v. Mitchell,* 242 S.W.2d 359, 364 [Ky. 1951]; *Raimonde v. Van Vlerah, supra* note 1, 325 N.E.2d at 547; *Wood v. May,* 73 Wash.2d 307, 438 P.2d 587, 591 [1968]. In *Wood* the court noted that partial enforcement permits accomplishment of the basic purpose of the contract.

6. See 14 Williston on Contracts, *supra* note 4 at 285, which states that:

"*Although a contract may contain excessively restrictive promises which are unenforceable, the contract may not be invalidated in its entirety where its general purpose is lawful."* [Emphasis added.]

In *Solari Industries, Inc. v. Malady, supra* note 1, 264 A.2d at 56, the court, quoting from Corbin on Contracts, noted "the fact that the restriction on an employee goes too far to be valid as a whole does not prevent a court from enforcing it in part insofar as it is reasonable and not oppressive"; see also *Kershaw v. Knox Kershaw, Inc.,* 523 So.2d 351, 359 [Ala.1988].

Because an appellate court's primary concerns in modifying a restrictive covenant are equitable,[7] a wide variety of reasons has been advanced as a basis for limiting or barring judicial modification.[8] Consideration of the various factors warranting a time, space or activity limitation gives the court the flexibility it needs to balance the interests of the parties and to award the employer a *reasonable shield from unfair dealing.* While equity should not enforce covenants unnecessary to protect the employer's legitimate interests, neither should it permit an unconscionable result caused by total rejection of an overly broad covenant. *A partial enforcement rule based on what is reasonable under the circumstances enables courts to impose some degree of restraint on employees who would otherwise be totally freed from their promissory obligations.*[9]

I would hence permit the noncompetitive covenants' partial enforcement, *based on what would be reasonable under all the circumstances,*[10] while disallowing relief where the employer has in fact acted in bad faith. This approach—adopted by a number of courts[11]—would assure the parties

who desire to enter into a legitimate covenant the benefit of preserving their intent as a preferable alternative to invalidating the covenant because a phrase within the restriction was found to be impermissibly broad.

An employer should be allowed to protect his stock of customers and their good will against appropriation by a former employee when this interest is not exercised in such a way as to unreasonably deprive the public of essential goods and services.[12]

On this record, I cannot view as unreasonable a judicial application of both a "nonsales" and "nonsolicitation" restraint to *present* and *former* customers of Pickard's employer as well as to *prospective customers* contacted by him during his employment with the company.[13] I would agree that a restraint is overly broad when it includes lines of businesses unrelated to the field in which the employee was engaged. To that extent the covenant should be pared down.[14]

The trial court's summary judgment for Pickard rests on the unwarranted legal conclusion that the covenants are facially

**7.** See *Ehlers v. Iowa Warehouse Company, supra* note 1, 188 N.W.2d at 374; *Westec Sec. Services, Inc. v. Westinghouse Elec., supra* note 4; *Bess v. Bothman,* 257 N.W.2d 791, 795 [Minn.1977]; *Karpinski v. Ingrasci,* 28 N.Y.2d 45, 320 N.Y.S.2d 1, 6, 268 N.E.2d 751, 755 [1971].

**8.** See Aspelund, *supra* note 1 at § 8.01 at pgs. 8–1 through 8–13. A claim for injunctive relief implicates equitable principles which must govern the court's determination whether the covenants should be enforced. See *Wood v. May, supra* note 5, 438 P.2d at 590; Aspelund, *supra* note 1, § 8.02[1][e] at p. 8–27.

**9.** In *Cascade Exchange, Inc. v. Reed,* 278 Or. 749, 565 P.2d 1095, 1098 [1977], the court noted that *"[e]quity has but little patience with men who deliberately violate their solemn promises and will enforce their obligations if any reasonable basis therefor may be found."* [Emphasis added.] See also *Ehlers v. Iowa Warehouse Company, supra* note 1 at 371.

**10.** "What limits as to activity … are appropriate in a particular case depends on all the circumstances." Restatement (Second) of Contracts § 188, Comment d, *supra* note 4.

**11.** A number of courts have established and been guided by good faith as a requirement for modification. See *Ehlers v. Iowa Warehouse*

*Company, supra* note 1, 264 A.2d at 370, where the court adopted the rule that *unless the facts and circumstances indicate bad faith on the employer's part, the court will enforce noncompetitive covenants to the extent they are reasonably necessary to protect the employer's legitimate interests without imposing undue hardship on the employee when the public interest is not adversely affected; Fullerton Lumber Co. v. Torborg,* 270 Wis. 133, 70 N.W.2d 585, 592 [1955]; *Solari Industries, Inc. v. Malady, supra* note 1, 264 A.2d at 56; *Smith, Batchelder & Rugg v. Foster,* 119 N.H. 679, 406 A.2d 1310, 1313 [1979]; 14 Williston, *supra* note 4 at § 1647(C) at 293–297; Aspelund, *supra* note 1, § 8.01 at p. 8–6.

**12.** See *Mills v. Murray,* 472 S.W.2d 6, 12 [Mo. App.1971]; *New Haven Tobacco Co. v. Perrelli, supra* note 1, 528 A.2d at 869.

**13.** *Solari Industries, Inc. v. Malady, supra* note 1, 264 A.2d at 61; *Coolidge Co. v. Mokrynski,* 472 F.Supp. 459, 463 [S.D.N.Y.1979]; *Mills v. Murray, supra* note 12 at 11–12, upholds as reasonable a covenant forbidding a management consultant to *solicit* or *service* former clients; *New Haven Tobacco Co. v. Perrelli, supra* note 1, 528 A.2d at 867–869.

**14.** See *Coolidge Co., Inc. v. Mokrynski, supra* note 13 at 463.

void and unmodifiable. No evidentiary hearing was afforded to consider the circumstances surrounding the . challenged agreements or their effect on the interests of the employer, the employee and the public. A decision to deny modification *before* probing into all the facts and circumstances that bear on the noncompetitive agreements' restraints constitutes error of law.[15] I would hence reverse summary judgment for Pickard and remand the cause for a full-scale equitable inquiry.[16] Absent a showing of the employer's bad faith the agreements should not be invalidated but rather modified; injunctive relief ought to be fashioned to the extent necessary to protect the competing interests in suit.

---

15. In *Waterfield Mortgage Co. v. O'Connor,* 172 Ind.App. 673, 361 N.E.2d 924, 926 [1977], a suit to enforce an employee's noncompetitive covenant, the court characterizes the ultimate determination as one of law, yet it holds *summary judgment was improper because the suit's resolution must invariably rest on adequate facts.* Aspelund, *supra* note 1, § 6.01, pg. 6–4, n. 10, cites a number of cases repeating the rubric that reasonableness must turn on the circumstances and facts of each case which, he observes, would appear to make the dispositive issue of reasonableness one of fact. But because a number of courts have expressly classified the dis-

positive determination as one of law, Aspelund concludes that the question may be more accurately characterized as a mixed question of law and fact. § 6.01, pg. 6–5, n. 12. Even so, it clearly appears that whether the issue is viewed as one of law or fact *the reasonableness and enforceability of a restraint is measured by the facts and circumstances of the case, not solely by the text of the written agreement.*

16. See *Solari Industries, Inc. v. Malady, supra* note 1, 264 A.2d at 61; *Eastern Distributing Co., Inc. v. Flynn,* 222 Kan. 666, 567 P.2d 1371, 1379 [1977]; *Raimonde v. Van Vlerah, supra* note 1, 325 N.E.2d at 548.