30 F.3d 142
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Sam RAMSEY and Jerry Ramsey, Plaintiffs/Appellants,
v.
GUARDSMARK, INC., Defendant/Appellee.
 No. 93-5010.
 United States Court of Appeals, Tenth Circuit.
 June 1, 1994.
 
 Before KELLY and McKAY, Circuit Judges, and ROGERS, District Judge.**
 ORDER AND JUDGMENT*
 ROGERS, District Judge.
 Plaintiffs/appellants Sam Ramsey and Jerry Ramsey brought this diversity action alleging that defendant, Guardsmark, Inc., committed malicious interference with their right to contract under Oklahoma law. Summary judgment was granted in favor of defendant. The case is now before this court upon plaintiffs' appeal of the summary judgment order.
 We review de novo an order granting summary judgment, viewing the record in the light most favorable to the non-moving party. Deepwater Investments, Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment is appropriate only if there is no genuinely disputed material issue of fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).
 Plaintiffs are former employees of defendant. Defendant is a security services company. Defendant had a contract to provide security at the Amoco Production Company facility in Tulsa, Oklahoma. Plaintiffs worked as security officers for defendant at the Amoco facility. Plaintiffs signed written agreements with defendant which contained noncompete provisions. The relevant provision in this case provided as follows:
 7. (a) Employee hereby agrees that following the termination of employment with GUARDSMARK, whether voluntarily or involuntarily, for a period of one year thereafter he or she will not perform or hire others to perform any security services at the site, place or location where he or she performed security services within the immediate preceding twelve (12) months of his or her employment with GUARDSMARK.
 Defendant lost its contract with Amoco in Tulsa in early 1990. Effective February 15, 1990, security services at the facility were provided by Burns International Security Services ("Burns"). Prior to this date, on or about January 30, 1990, defendant notified Burns and Amoco of the noncompete agreements defendant had with its employees. Defendant also reminded Amoco that Amoco had agreed in its contract with defendant not to permit former Guardsmark employees to work at the Amoco facility for a year after the termination of the contract, or pay the sum of $750.00 for each person so employed.
 Amoco decided to obey the terms of the contract and instructed Burns not to use former Guardsmark employees at the Amoco facility. Although Burns considered employing plaintiffs and other Guardsmark employees at the Amoco facility, Burns decided against it for fear of litigation.
 Defendant had no other positions available for plaintiffs when its contract with Amoco expired. Nevertheless, defendant did not release plaintiffs from the terms of the noncompete agreement.
 Security companies commit substantial resources to recruitment, background investigations, and training of employees. There is an advantage to retaining quality incumbent security personnel when one security company takes over an account from another security company.
 There is no claim in this case that plaintiffs held any trade secrets or confidential information which defendant sought to protect. Nor were plaintiffs attempting to go into direct competition with defendant.
 Under the terms of the noncompete provision, for one year after February 15, 1990, plaintiffs were barred from working as security officers at the Amoco facility. But, they could work as security officers for any company at any other location.
 Under Oklahoma law, there are three elements necessary to the tort of malicious interference with contract rights: 1) that plaintiffs had a contractual or business right which was interfered with; 2) that the interference was malicious and wrongful, and not justified, privileged or excusable; and 3) that plaintiffs suffered damage proximately caused by the interference. Mac Adjustment, Inc. v. Property Loss Research Bureau, 595 P.2d 427, 428 (Okla.1979); Haynes v. South Community Hospital Management, Inc., 793 P.2d 303, 307 (Okla.App.1990).
 There is no dispute in this case concerning the first element. Plaintiffs had a contractual right or business relation with which defendant interfered. Nor is the third element an issue on appeal. The controversy in this case centers upon the second element, whether the interference was malicious and wrongful, and not justified, privileged or excusable.
 An Oklahoma statute prohibits unreasonable restraints on the exercise of a lawful profession, trade or business. This statute, OKLA.STAT.ANN. tit. 15, Sec. 217 (West 1993), provides:
 Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, is to that extent void.
 Sections 218 and 219 provide for exceptions which are not relevant to the facts of this case.
 A restraint is considered reasonable only if it: "(1) is no greater than is required for the employer's protection, (2) does not impose undue hardship on the employee and (3) is not injurious to the public." Bayly, Martin & Fay, Inc. v. Pickard, 780 P.2d 1168, 1176 (Okla.1989) (Opala, V.C.J., and Lavender, J., concurring in part and dissenting in part). This requires a balancing of the employer's, the employee's, and the public's interests. Id.
 
 
 1
 The district court judge in the instant case properly considered three commonly-used factors when he held that the noncompete agreement was a reasonable restraint under Oklahoma law. He examined the scope of activities covered, the geographical area, and the length of time. He also approved defendant's business interest against employee raiding. Under different circumstances, this might have been sufficient to support summary judgment.
 
 
 2
 However, insufficient weight was given to the fact that defendant had already lost the Amoco contract at the time it attempted to enforce the noncompete agreement. Defendant also had no other position to employ plaintiffs. These facts severely diminished defendant's interest in the employee restraints. Defendant had already lost its investment in the employees because it had no job for them. Enforcing the noncompete provision, when defendant was not going to employ plaintiffs, did little but exacerbate the harm to plaintiffs when the benefit to defendant was minimal. On the basis of this record, construing the facts in a light most favorable to plaintiffs, we do not believe one can hold as a matter of law that the noncompete agreement was a reasonable restraint of a profession, trade or business in conformance with the Oklahoma statute.
 
 
 3
 Defendant contends that the "malice" element of the wrongful interference tort cannot be satisfied by the evidence presented on the record because defendant had a good faith belief in the legality of the noncompete agreement. We disagree. In Del State Bank v. Salmon, 548 P.2d 1024 (Okla.1976), the Oklahoma Supreme Court indicated that interference by an unlawful means is sufficient to establish malice. The court stated: "If one, without a privilege, intentionally interferes; if unlawful means are used; or if done without justifiable cause, then he becomes liable to the employee for proximately caused harm." Id. at 1026 (emphasis added). In other words, one cannot escape liability on a wrongful interference claim by asserting good faith in the face of the intentional use of a noncompetition agreement which was unreasonable and contrary to Oklahoma law. A finding of hatred, spite or ill will is not required for liability. Id.
 
 
 4
 Finally, we note plaintiff Sam Ramsey's argument that the noncompetition agreement was not enforceable against him because it was not supported by sufficient consideration. We do not reach that issue or any other issues not specifically addressed in this order.
 
 
 5
 In conclusion, we hold that the district court erroneously granted summary judgment for defendant. The summary judgment order is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Richard D. Rogers, Senior District Judge, United States District Court for the District of Kansas, sitting by designation