**Mabelle R. BLACK, widow and surviving spouse and personal representative of the Estate of Glen L. Black, deceased, and next friend of LeRoy Black, a minor, and on behalf of Mary Black Dowell and Nora Black Dowell, surviving adult children of Glen L. Black, deceased, Plaintiffs–Appellants,**

v.

**CABOT PETROLEUM CORPORATION, a Delaware corporation, Defendant–Appellee.**

No. 87–1102.

United States Court of Appeals, Tenth Circuit.

June 12, 1989.

Gordon H. Rowe III, Oklahoma City, Okl. (Gordon H. Rowe, Jr., Monte Vista, Colo. and Bruce W. Pitzer of John W. Norman, Incorporated and Associates, Oklahoma City, Okl., with him on the brief), for plaintiffs-appellants.

Michael C. Felty (William G. Smith with him, on the brief), of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendant-appellee.

Before TACHA, BARRETT and EBEL, Circuit Judges.

EBEL, Circuit Judge.

This diversity case concerns the application of Colorado's workers' compensation statute. The principal issue is whether a general contractor whose subcontractor carries adequate workers' compensation insurance is immune from suit by the subcontractor's injured employee.

The facts necessary for resolving this appeal are not in dispute. Plaintiffs are the spouse and children of Glen L. Black ("Black"), a welder killed in an oil field accident. Defendant Cabot Petroleum Corporation ("Cabot") is an oil drilling company that was responsible for plugging and capping the oil well involved in the accident.

Pursuant to a farm out agreement, Cabot undertook to determine whether a previously-drilled oil well in Colorado could be made productive. Cabot concluded that the well should be abandoned. Colorado regulations required Cabot to plug and cap the well before abandoning it. The capping process includes cutting off the well head and welding a steel plate over the well's opening. Cabot hired an independent contractor, Cleo Keith Welding Service ("Cleo Keith"), to cap the well. Black was a self-employed welder who often worked for Cleo Keith on a subcontract basis. Cleo Keith hired Black to perform the work necessary for the capping. While Black was cutting off the well head at the site, it fell on him and killed him.

At the time of the accident, Cleo Keith had a workers' compensation insurance policy in effect with the Colorado State Insurance Fund. Cabot also had a workers' compensation insurance policy in effect at that time.

Plaintiffs sued Cabot under a products liability theory and for negligence. Cabot moved for summary judgment, asserting that plaintiffs' claims were barred by the Colorado Workmen's Compensation Act (the "Act"). Colo.Rev.Stat. §§ 8–40–101 to 8–54–127. The district court granted Cabot's motion, holding that Colorado law applied to the suit and that the Act constituted plaintiffs' exclusive remedy.

On appeal, plaintiffs contend that Oklahoma law rather than Colorado law applies to the suit. Plaintiffs further argue that even if Colorado law does apply, the Act does not bar their claims because (1) Cabot was not a statutory employer of Black; (2) Cabot was not immune from suit under Colo.Rev.Stat. § 8–48–102 as an owner of real property or improvements; and (3) Cabot had not complied fully with the Act's notice and filing requirements.

## I. CHOICE OF LAW

At the outset, we agree that Colorado law applies to this case. The undisputed facts show that the underlying accident occurred in Colorado. At the time of the accident, both Black and his wife were residents of Colorado, although they had recently moved there from Oklahoma. Black and his wife had obtained Colorado drivers licenses, had opened bank accounts in Colorado, and had registered several of their vehicles in Colorado. Cleo Keith, the contractor who hired Black, likewise was located in Colorado. Cabot, although chartered in Delaware and headquartered in Texas, was registered to do business in Colorado and was working on the Colorado well involved in the accident.

A federal district court sitting in a diversity case must apply the choice of law rules of the state where it sits, which in this instance is Oklahoma. *Vandeventer v. Four Corners Electric Co.,* 663 F.2d 1016, 1017 (10th Cir.1981). We conclude that under Oklahoma's "most significant relationship" choice of law rule, the law of Colorado applies here. *See, e.g., Brickner v. Gooden,* 525 P.2d 632, 637 (Okla.1974) (considering place where injury occurred, place of conduct causing injury, domicile and place of business of parties, and place where relationship of parties occurred).

## II. APPLICATION OF WORKERS' COMPENSATION STATUTE

Although conceding that Cabot had its own workers' compensation insurance

policy in effect at the time of the accident, plaintiffs assert that Cabot should not be immune from suit. Plaintiffs argue that Cabot did not meet the various requirements for being a statutory employer under Colorado law and that, even if Cabot was a statutory employer and was properly insured, it lost its immunity by failing to follow the Act's notice and filing requirements.[1]

In response, Cabot maintains, among other things, that regardless of the effect of its own insurance policy or its compliance with the Act's requirements, Section 8–48–101(2) of the Act immunizes Cabot from suit because Black's direct employer, Cleo Keith, carried workers' compensation insurance at all relevant times. Colo.Rev.Stat. § 8–48–101(2). That section provides that general contractors (such as Cabot) are immune from suit for injuries to employees of their subcontractors (such as Cleo Keith) so long as the subcontractors maintain workers' compensation insurance.[2]

Cabot argues, inter alia, that we need not address the effect of Cabot's own insurance because Section 8–48–101(2) and a Colorado Supreme Court decision interpreting it, *Buzard v. Super Walls, Inc.*, 681 P.2d 520 (Colo.1984), are controlling here. We agree.

The Colorado Supreme Court in *Buzard* held that under Section 8–48–101(2), an injured employee of an adequately-insured subcontractor cannot recover from the general contractor or from other "upstream" employers. In that case, defendant Super Walls was the general contractor on a construction project. Super Walls subcontracted part of the work to Hawkins Con-

struction Co., which in turn subcontracted part of it to plaintiff Buzard. Buzard was injured when a roof that he was working on collapsed. All three parties, the general contractor (Super Walls), the subcontractor (Hawkins Construction), and the "sub-sub-contractor" (Buzard himself), carried workers' compensation insurance. Buzard sued Super Walls, claiming that, as a "sub-sub-contractor," he should be allowed to reach upstream and impose tort liability on the general contractor, Super Walls.

The Colorado Supreme Court rejected Buzard's claim. The court found that the "legislature ... intended that workers' compensation be the remedy for all contractors 'downstream' from the one contracting out work, regardless of how many intermediate contractors there might be." 681 P.2d at 522. The court held that under the Act, if a downstream subcontractor obtains workers' compensation insurance, then all upstream subcontractors and general contractors are immune from suit:

> Under section 8–48–101(2) if [Buzard] has obtained insurance he cannot reach "upstream" to Hawkins Construction or Super Walls to establish tort liability; they are immune from suit as any insured employer would be. *See* section 8–43–104, C.R.S.1973 (1983 Supp.). Statutory immunity goes hand in hand with statutory liability. *Krueger v. Merriman Electric*, 29 Colo.App. 492, 488 P.2d 228 (1971); *Frohlick Crane Service, Inc. v. Mack*, 182 Colo. 34, 510 P.2d 891 (1973). The requirement that Buzard, acting as an employer, obtain insurance in order for Super Walls to be immune from suit guarantees that there will be

---

1. A statutory employer is a person or entity that, although not necessarily the direct employer of an injured worker, is responsible under the Act for paying compensation benefits to the worker. *See, e.g.,* Colo.Rev.Stat. § 8–48–101(1).

2. Colo.Rev.Stat. § 8–48–101 provides, in pertinent part:

   (1) Any person, company, or corporation ... contracting out any part or all of the work thereof to any ... subcontractor ... shall be construed to be an employer as defined in articles 40 to 54 of this title and shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to

said ... subcontractors and their employees or employees' dependents....

(2) If said ... subcontractor is himself an employer in the doing of such work and, before commencing such work, *insures and keeps insured his liability* for compensation as provided in articles 40 to 54 of this title, *neither said ... subcontractor, its employees,* or its insurer *shall have* any right of contribution or *action of any kind* ... against the person, company, or corporation ... contracting out any part or all of the work thereof....
Emphasis added.

immunity only when full workers' compensation benefits are obtainable. It also encourages those contracting out work to require that contractors and subcontractors obtain workers' compensation insurance, as occurred in the present case.

681 P.2d at 523.

The court in *Buzard* concluded that because Buzard (and, for that matter, Hawkins Construction) had obtained workers' compensation insurance, "Super Walls is immune from tort liability to Buzard." *Id.* *See also, e.g., Edwards v. Price,* 191 Colo. 46, 550 P.2d 856, 859 (1976) (survivors of deceased employee of subcontractor that carried workers' compensation insurance could not sue general contractor: "[T]he survivors received their workmen's compensation benefits from Jelco, Inc. [the subcontractor], and as noted above, the statute provides that under those circumstances the survivors cannot maintain a negligence action against SCC [the general contractor] or any of its principals"), *appeal dismissed,* 429 U.S. 1056, 97 S.Ct. 778, 50 L.Ed.2d 773 (1977).

Here, Cabot was an oil drilling company that, as part of its normal operations, "contract[ed] out ... part or all of [its] work" to subcontractors, such as Cleo Keith. Colo.Rev.Stat. § 8–48–101(2). Colorado regulations specifically required Cabot to plug and cap oil wells before abandoning them. 2 Code Colo. Regs. 404–1 §§ 301, 305, 332. Thus, the plugging and capping of wells was inherently a "part of [Cabot's] regular business operation," and Cabot had no choice but to do the task itself or to hire someone else to do it. *Pioneer Construction Co. v. Davis,* 152 Colo. 121, 381 P.2d 22, 24 (1963). *See Finlay v. Storage Tech-*

*nology Corp.,* 764 P.2d 62, 67 (Colo.1988) (computer equipment company contracted out part of its work for workers' compensation purposes when it hired janitorial service firm); *Melody Homes, Inc. v. Lay,* 44 Colo.App. 49, 610 P.2d 1081, 1087 (1980) (builder contracted out part of its work for workers' compensation purposes when it hired security firm to patrol construction site).

Because it is undisputed that Cleo Keith had workers' compensation insurance at the time of the accident, plaintiffs must look exclusively to Cleo Keith for workers' compensation benefits.[3] Plaintiffs can have no "action of any kind" against the general contractor, Cabot. Colo.Rev.Stat. § 8–48–101(2).

The judgment of the district court is AFFIRMED.

---

**3.** Although Cleo Keith did not give notice of Black's accident and death to the Colorado Division of Labor within the time required by Colo. Rev.Stat. § 8–52–105, that requirement is not jurisdictional. The Division did receive notice of the accident from Cabot. The parties have submitted supplemental authority to this Court showing that plaintiffs eventually brought a workers' compensation claim before the Division against Cleo Keith, Cabot, and their respective insurance carriers. In a now-final decision, the Division held that because Cleo Keith's insurance carrier had stipulated to its coverage of

Black, plaintiffs could not look to Cabot for compensation benefits: "[I]nasmuch as Cleo F. Keith had insured and kept insured his workmen's compensation insurance in the State of Colorado and ... the State Compensation Insurance fund has admitted and stipulated that Glen L. Black was an employee of Cleo F. Keith, ... Cabot Petroleum Corporation and their insurer ... have no responsibility herein and should be dismissed as parties to this action." (Order, W.C. No. 3–835–481, April 13, 1987, as modified February 1, 1988.)