**Paul HERCHMAN, Plaintiff,**

v.

**SUN MEDICAL, INC., Defendant.**

**No. 89–C–649–E.**

United States District Court,
N.D. Oklahoma.

March 30, 1990.

Mark C. Lindberg, Gary W. Wood, J. Patrick Cremin, Donald L. Kahl, Hall, Estill, Hardwick, Gable, Golden & Nelson, Inc., Tulsa, Okl., for plaintiff.

James W. Rusher, Gable & Gotwals, Tulsa, Okl., David F. Brown, Mark C. Taylor, Liddell, Sapp, Zivley, Hill & Laboon, Dallas, Tex., for defendant.

## ORDER

ELLISON, District Judge.

NOW on this 30th day of March, 1990, comes on for consideration the above styled matter and the Court, being fully advised in all premises, finds that on December 14, 1989, Magistrate Wolfe entered his Report and Recommendation that Defendant's Motion for Preliminary Judgment be denied and that Judgment in the case be entered for Plaintiff on the declaratory judgment action. While Defendant Sun Medical originally objected to such Report and Recommendation, on February 5, 1990, Defendant withdrew its previously filed objection to such Report and Recommendation, leaving no objection in place. This Court has now carefully reviewed the file, including the arguments made, authorities cited and exhibits presented, and finds that denial of the requested preliminary injunction and granting of Judgment in favor of Plaintiff in the case is indeed a proper result.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant Sun Medical's Motion for Preliminary Injunction should be and is hereby denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Judgment should be and is hereby granted in favor of Plaintiff in this case. Counsel for Plaintiff is directed to prepare and file an appropriate agreed form of Judgment within 10 days of this date.

## REPORT AND RECOMMENDATION OF U.S. MAGISTRATE

Filed Dec. 14, 1989.

JEFFREY S. WOLFE, United States Magistrate.

Now before the United States Magistrate for report and recommendation is Defendant Sun Medical, Inc.'s ("Sun") *Motion*

*for Preliminary Injunction* (docket # 3). Following an evidentiary hearing, wherein the undersigned heard sworn testimony of Defendant's President and Vice President, as well as that of Plaintiff, Paul Herchman ("Herchman"), the United States Magistrate finds as follows.

First, based upon the evidence before the court, the United States Magistrate recommends that the hearing on the Preliminary Injunction be consolidated, per Rule 65(a)(2), Fed.R.Civ.P. with the trial of the action.

The *Complaint* seeks declaratory relief that the "Covenant Not to Compete", found in his *Employment Agreement* (Exhibit A, to the Evidentiary Hearing, attached hereto), is "void and unenforceable as it is an illegal restraint of trade within the meaning of 15 O.S. § 217 ..." (*Complaint*, at ¶ VIII). By way of *Answer and Counterclaim*, Sun seeks no monetary relief, only an injunction "restraining and prohibiting Herchman from violating the terms and conditions of the Employment Agreement and in particular, Paragraph 10 [the "Covenant Not to Compete"] thereof, and from disclosing proprietary and confidential information regarding Sun." (*Counterclaim*, at ¶ 10).

A ruling on Sun's *Motion* necessarily requires the Court to examine (1) the contract, and, in particular, the "Covenant Not to Compete"; and (2) Herchman's conduct. Finally, Sun bears the burden of proving that (1) there is a substantial likelihood of success on the merits; (2) irreparable injury will result if the injunction is not granted; (3) the threatened injury to the movant outweighs whatever damage an injunction would cause the opposing party; and (4) an injunction would not be adverse to the public interest. (*Ewing v. AMOCO Oil Co.*, 823 F.2d 1432, 1436 (10th Cir., 1987)). Furthermore, in this Circuit, "if the last three factors are satisfied, the movant need only demonstrate that there are sufficiently serious questions going to the merits to present a fair ground for litigation." (*Ewing v. AMOCO Oil Co., supra* at p. 1436).

## 1. CONFLICT OF LAWS

■ The threshold question raised by the parties, focuses upon the law to be applied in resolution of this case. Plaintiff contends Oklahoma law should be applied, while Defendant urges the court to adopt Texas law.

A federal court, sitting in diversity jurisdiction, as here, must apply the choice-of-law rules of the state in which it sits. *Black v. Cabot Petroleum Corp.*, 877 F.2d 822 (10th Cir., 1989). Oklahoma has adopted the *Restatement* (Second) as the basis for its choice-of-law rules. *Brickner v. Gooden*, 525 P.2d 632 (Okla.1974). *Brickner* held:

> [A]s a general principle, the rights and liabilities of parties ... shall be determined by the local law of the state which, with respect to that issue, has *the most significant relationship* to the occurrence and the parties. The factors to be taken into account and to be evaluated according to their respective importance with respect to a particular issue, shall include:
>
> (1) the place where the injury occurred,
>
> (2) the place where the conduct causing the injury occurred,
>
> (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> (4) the place where the relationship, if any, between the parties occurred. (*Id.*) (Emphasis added.) *See also, Black v. Cabot Petroleum Corp., supra* (10th Cir.1989), wherein the court recognized the foregoing as the Oklahoma choice-of-law rule.

Applying Oklahoma's "most significant relationship" test, the United States Magistrate finds as follows.

Sun argues that Texas bears the most significant relationship to the "occurrence and the parties" because (1) Sun is headquartered there; (2) the *Employment Agreement* was signed there; (3) at the time he signed the *Employment Agreement*, Herchman was a resident of Texas; and (4) the *Agreement* specifies that Texas law applies. The Magistrate disagrees.

While Herchman may have been a Texas resident at the time he signed the agreement,[1] neither that fact, nor the fact that Sun is headquartered in Texas, has any bearing on the transactional issues now before the court. The express object of the contract was to employ Herchman to move to Oklahoma and work exclusively in that territory. (*See, Employment Agreement,* "Exhibit A"). In fact, Herchman did move to Oklahoma, and worked for Sun for a little over three (3) years. During his tenure, he sold, among other equipment, medical lasers to Oklahoma physicians, clinics and hospitals, and was, according to Sun's testimony, one of their best salespersons.

Both Greg Selards, Sun's President, and Wayne Nettles, its Vice–President, testified that they came to Oklahoma, and, in Nettles' case, on a regular basis, to assist Herchman and review sales efforts.

■ As the object of the contract was Herchman's employment in Oklahoma, requiring him to move to Oklahoma; and, as the question now before the court is whether to enforce a "Covenant Not to Compete", restricting Herchman from acting in Oklahoma, the United States Magistrate finds, applying the "most significant relationship test", that Oklahoma's law should apply in determining whether the "Covenant Not to Compete" is enforceable.[2]

## 2. APPLICATION OF OKLAHOMA LAW

■ By its *Motion,* Sun seeks a preliminary injunction, in effect, enforcing the "Covenant Not to Compete" clause of the *Employment Agreement.* If the clause is unenforceable, an injunction may not issue. If the clause is enforceable the question becomes whether Defendant is entitled, by

reason of Plaintiff's conduct, to injunctive relief. Thus, by reason of Sun's *Motion,* the essence of this declaratory action (whether the clause is enforceable) is now before the court.

The questioned "Covenant Not to Compete" is as follows:

> *During the term of this agreement and for a period of one year after the termination of this agreement, employee agrees (a) not to solicit business from any party that is a customer of employer at the time of the termination of this agreement or at any time during the one year immediately preceding [sic] the termination of this agreement and (b) not to engage in the business, directly or indirectly, whether individually or as an employee, independent contractor, partner, officer, director, consultant, or shareholder of any other legal entity, of selling, renting, leasing or repairing competitive medical equipment in the states of Texas, New Mexico, Oklahoma and Arkansas. Employee acknowledges that this covenant not to compete is reasonable in time and scope.*

The most recent review of covenants not to compete in Oklahoma came in *Bayly, Martin & Fay, Inc. v. Pickard,* 780 P.2d 1168, 1170–71 (Okl.1989), wherein the Oklahoma Supreme Court reiterated that Oklahoma adheres to "[t]he majority rule ... that unreasonable restraints are prohibited and that reasonable restrictions will be enforced." (*Id.*) *See also, Tatum v. Colonial Life and Accident Ins. Co.,* 465 P.2d 448, 451 (Okla.1970); and *Crown Paint Co. v. Bankston,* 640 P.2d 948, 952 (Okla.1981). The Oklahoma courts have found that "Section 217 prohibits any unreasonable re-

---

**1.** Interestingly, the preamble of the *Employment Agreement* recites that "Paul Herchman" is "an individual who resides in ___, ___ County, *Ok* ..." (Emphasis in original.)

**2.** Even if one were to conclude that Texas law applied, the court would not be obligated to enforce a contract repugnant to the public policy of Oklahoma. "[C]omity ... does not require courts of this state to enforce a foreign contract which is repugnant to the public policy of this state ..." *Union Savings Association v.*

*Cummins,* 190 P. 869, 870 (Okla.1920); *Tatum v. Colonial Life and Accident Ins. Co.,* 465 P.2d 448, 450 (Okla.1970). Indeed, this is also the law of Texas. *Desantis v. Wackenhut,* 793 S.W.2d 670 (Tex.1990); ("(A)n express agreement of the parties that the contract is to be governed by the laws of a particular state will be given effect if the contract bears a reasonable relation to the chosen state and no counterwailing public policy of the forum demands otherwise.")

straints on the exercise of a lawful profession, trade or business." (*Id.*)

The initial question thus becomes whether the instant covenant is "an unreasonable restraint". Upon review, the Magistrate finds, as a matter of law, that the clause in question is an unreasonable restraint in violation of 15 O.S.1981 § 217. First, this transaction involves neither the sale of goodwill nor dissolution of a partnership, per 15 O.S.1981 § 218. Second, the clause purports to restrict Herchman's activity in Texas, New Mexico, and Arkansas, when, during the term of the contract, he never sold, rented or leased any equipment in those states. Furthermore, the contract, by its own terms, clearly called upon Herchman to work only in Oklahoma. To restrict his activity to three other states, when he was never employed to work in those locations in the first instance, is unreasonable.

Third, review of the first clause (paragraph (a)) of the covenant, leads the United States Magistrate to the conclusion that it is virtually unenforceable by its own terms. The oral argument of the parties is illustrative. The clause calls for Herchman to refrain from soliciting "business from any party that is a customer of employer at the time of the termination of this agreement or at any time during the one year immediately preceding the termination ..."

Sun argues a broad interpretation of the word "customer", including within that term physicians or other health care persons who may have *recommended* to ultimate purchasers, the purchase of equipment (specifically, medical lasers), when they themselves made no such purchase. Thus, somehow, by prohibiting "business" with such persons, Sun seeks to protect a "good will" interest, when, in fact, there has been no sale of good will. By Sun's definition, the term "customer" includes anyone who endorsed the purchase of their lasers, and especially those doctors who advocated the purchase with a hospital's department head or administrator, *even*

though they did not, themselves, buy or otherwise rent or lease a laser. The term also includes, by Sun's definition, persons to whom presentations were made, but who *declined* to buy.

Fourth, the United States Magistrate finds that the prohibition, by which Sun seeks to bind Herchman, to-wit: that he "not ... solicit business from any party", is *prima facie* unreasonable. The term "business" is not limited or defined.[3] Thus, the covenant, by its own terms, would prevent Herchman from "solicitation" of any type, regardless of the nature of the "business". Such a broad-sweeping restriction is unreasonable. Furthermore, the unlimited restriction on solicitation of "customers", who were customers at the time of the termination or during the one year proceeding, fails to account for "customers" who may decide to seek business elsewhere. This precise situation was addressed by the Oklahoma Supreme Court in *Bayly, supra,* wherein the court, in finding such a provision unreasonable, observed:

> It is conceivable that the provision could restrict Pickard from selling insurance to parties who became clients during his tenure with the company but who have since ceased to do business with Bayly, or with potential insurance clients contacted by Bayly but who never became its clients. (*Id.* at p. 1175.)

This same defect plagues the second portion (paragraph (b)) of the covenant. Herchman is "not to engage in the business, directly or indirectly ..."; but, again, the contract fails to define "the business" except generally as "sales".

To give meaning to the contract, the court must resort to extrinsic evidence and thereby modify the *Agreement.* Modification by courts of covenants not to compete are not accomplished as a matter of routine. Rather, as the *Bayly* court noted,

> The modification principle allows courts to escape the rule of arbitrary refusal to

---

**3.** Indeed, nowhere in the *Employment Agreement* is the reader told what Herchman is to do (except be a salesman). There is no mention of the products he is to sell. The only reference, and by definition, an oblique one, is found in paragraph (b) of the "Covenant Not to Compete". Otherwise, Herchman's position seems to be generally that of a "sales" person.

enforce a covenant and serves to protect legitimate interests of the parties or the public. However, not all jurisdictions recognizing that reasonable restrictions are enforceable will rewrite the parties' agreements. Instead, these courts find that if a covenant not to compete contains an illegal or unenforceable clause, the whole covenant fails. *Other courts while recognizing that judicial modification is appropriate refuse to modify agreements if the elements of the contract are so lacking that the court would be required to provide essential elements of the agreement. Courts are hesitant to rewrite contracts especially where no justification exists for the restriction imposed. (Bayly, supra* at pp. 1172–73). (Emphasis added.)

The court further held, as regards modification in Oklahoma, that,

Because § 217 prohibits only those contracts in unreasonable restraint of trade, judicial modification is justified if the contractual defect can be cured by imposition of reasonable limitations concerning the *activities embraced, time,* or *geographical limitations. (Id.)* (Emphasis added.)

The *Bayly* court found that limitations imposed on appeal, by the Court of Appeals, failed to cure "1) the defects relating to accepting or servicing of clients; 2) the agreements restricting Pickard from competing in lines of business unrelated to the insurance industry; or 3) those restricting the sale of any kind of insurance to Bayly clients", finally holding,

Courts cannot supply material terms of a contract or read in terms not contained therein. The Court of Appeals' imposition of a reasonable geographical limitation limiting operation of the three agreements to Tulsa County did not cure the other material defects of the three provisions. *Because these contracts would require material judicial alteration and the provision of essential terms in order to come within the rule of reason, the Court of Appeals erred in modifying the contract. (Id.* at p. 1175.) (Emphasis added.)

The same material defects exist in the instant *Employment Agreement.* To address defects relating to accepting or servicing of clients (i.e.: "customers"), engaging in other "business" (there being no definition in the *Agreement* in the first instance as to what the "business" of the parties is), and, the geographic scope of the agreement, would require "material judicial alteration of essential terms in order to come within the rule of reason"; hence, applying Oklahoma law, the court cannot engage in modification. The "Covenant Not to Compete" is, therefore, unenforceable.[4]

Brief review of the testimony before the court is illustrative of the difficulties facing the court, should it attempt modification. Review is also helpful for the purpose of determining whether, notwithstanding the defects of the "Covenant Not to Compete", there is, by Herchman's conduct, any basis for injunctive relief.

### 3. DISCUSSION OF THE EVIDENCE BEFORE THE COURT

■ Herchman formed, during the last days of his employment with Sun, a Texas corporation by the name of "Laser Support Services, Inc." ("LSSI"). The primary product marketed and sold by Herchman, as a salesperson for Sun during his three year tenure, were medical lasers.[5] In forming LSSI, Herchman testified that he was attempting to fill a niche in the mar-

---

**4.** As noted earlier, even if Texas law applied, the court would still be constrained to find that the clause was unenforceable as contrary to the public policy of the jurisdiction (Oklahoma) in which it is to be enforced. Any argument that the contract is enforceable under Texas public policy is irrelevant, as the contract is not sought to be enforced there. Herchman was employed, and worked exclusively in Oklahoma. Thus, just as a Nevada gambling contract may be valid under that state's public policy, same cannot be enforced in this jurisdiction, as void in light of *Oklahoma's* public policy; this contract cannot be enforced here.

**5.** Sun clearly sold other types of medical equipment, but the emphasis was equally clearly upon sale of lasers. They are, without question, the most costly product in Sun's line, and the only reason Sun seeks injunctive relief.

ketplace that Sun was unwilling to fill. More particularly, the primary emphasis of LSSI is *rental* of medical lasers for short periods of time, rather than promoting sales. Herchman testified that many medical practitioners have a need for such equipment, but are constrained by the high cost of purchase. Indeed, smaller, rural hospitals are caught in the same bind.

Before embarking on the LSSI venture, Herchman attempted to promote the concept with Sun. At one point, Herchman testified that he had reached an agreement with St. John's Medical Center, in Tulsa, for just such a rental. Sun's President and Vice–President both testified that they vetoed the proposition because it was not cost-effective. Instead, they proposed what was, in essence, a lease-purchase plan, in fact, little more than an installment payment program, not a rental. St. John's would not, under Sun's counter-proposal, be entitled to return the laser, once placed in the hospital. The rental was *not* made to St. John's.

Indeed, Sun's witnesses both testified that Sun had never rented a laser in Oklahoma; and, had in fact, rejected Herchman's concept of such a rental program, as above. The rejection, as shown, came *after* a meeting, in Oklahoma, with both Selards and Nettles, whereby Herchman attempted to promote such an effort while still acting for Sun.

Since leaving Sun on August 7, 1989, Herchman has engaged in a marketing effort to *rent* medical lasers, both in Oklahoma, and, in Chicago, Illinois. He testified that his efforts, to date, have been more successful in Chicago, than in Oklahoma.

Both Selards and Nettles testified that Sun would be irreparably harmed by Herchman's activities, in depriving Sun of sales in the marketplace. When asked whether they could point to any specific instances when Herchman (LSSI) had, in fact, interfered with a sale, or prevented same, neither witness could so testify. The

gist of their testimony is that *rentals* will detrimentally affect *sales*, with no specific showing in support. The only situation that came to mind was a sales presentation made to a medical partnership between a Dr. Folger and Dr. Puckett while Herchman was still with Sun. Sun's witnesses testified that Herchman made a sales presentation, without result. Later, the partnership dissolved, and Herchman, acting for LSSI, approached Dr. Folger, now practicing on her own, with the possibility of a rental. A rental was made, effective following Herchman's termination with Sun. Clearly, however, such a transaction is distinctly different from that of a sale to a partnership.[6]

Other than this single circumstance, no testimony was offered of Herchman's contact with any prior "customer", and significant issue exists over whether Dr. Folger could be called a "customer", given that neither she nor her former partnership ever bought anything from Sun. The only other instance brought to light in oral testimony was Herchman's contact, while acting for LSSI, with another physician who, while Herchman was employed with Sun, had recommended to a local hospital, the purchase of a Sun laser. While the *hospital* bought the laser, the physician did not, himself, buy the equipment.

Sun repeatedly testified that they had invested considerable time and expense in training Mr. Herchman and, as a result of that training, benefitted him not only with a knowledge of medical lasers, but of the Oklahoma territory. Sun thus argues that he should be prevented from working for LSSI in Oklahoma because he gained his knowledge of the doctors, hospitals and other health-care providers in the state while working for Sun. To allow him to work in a similar area would be "unfair". To this end, Sun's attorneys questioned Herchman about his background and knowledge. Herchman admitted to having little prior contact with medical lasers before working for Sun, but, had been previ-

---

6. In fact, Herchman testified that Dr. Folger could not, practicing on her own, afford to buy; hence, rental was more attractive.

ously successfully employed as a medical supplies salesperson with two other such companies in Texas. Even Sun's witnesses acknowledged the value of his prior-existing sales ability, *and,* the fact that he became "one of Sun's best salespersons". Herchman himself testified that Sun's "contact list" was a starting point in 1986, but since that time had developed his own contacts; i.e.: by getting to know the doctors and hospitals in the state.

On two occasions, Sun offered testimony attempting to show the likelihood of confusion. In this they failed. In the first instance, Sun's witnesses testified that a person called Sun, asking for Herchman. When told he no longer worked there, the caller immediately exclaimed, without prompting, "Oh yes, he's now with LSSI". Without more (i.e.: who the caller was, and whether a previous sale had been made to the caller), this would seem to be proof of the opposite, i.e.: the caller definitely knew that Herchman was *not* with Sun.

In a second instance, Sun's witnesses testified to an encounter with a doctor who was preparing to discuss medical lasers with them, when the physician suddenly stated, "Wait, you're not the one who sent me the brochure", and then declined to meet. *No mention was made of Herchman or LSSI.* This becomes particularly important because both of Sun's witnesses testified that there were "three or four other companies in Oklahoma, selling medical lasers".

Thus, not only is there no evidence before the Court to support an injunction (i.e.: no testimony of irreparable harm), there *is* evidence that (1) other companies are competing in the marketplace; (2) Sun declined to engage in a rental program like LSSI's; and (3) LSSI (or Herchman) has *not* interfered with or disturbed any relationship between a Sun "customer" and Sun. And,

even if the "Covenant Not to Compete" were not materially defective, as shown, there is no evidence that the injury complained of is not redressable in money damages.[7]

Thus, while Sun complains that rentals will affect sales, they offer no tangible evidence that Herchman's activities with LSSI have, in fact, affected sales. And, given the defective non-competition language of the employment agreement, the mere fact that Herchman is offering to *rent* instead of *sell* medical lasers, is not, *per se,* conduct which can or should be the subject of the court's injunctive power. In a free society, the fact that Herchman, by reason of his former employment, has become familiar with the medical community in Oklahoma, is no more subject of an injunction, than would a trial lawyer who gains experience in a particular expertise and then leaves his firm for another. In the absence of an agreement embodying reasonable restraints on his profession or trade, Herchman is free to do business without court order. His conduct has not been shown to be wrongful, or the cause of irreparable injury to Sun.

Furthermore, any restraint placed upon Herchman will result in severe hardship and undue burden, i.e.: a termination of his livelihood.

Finally, Sun seeks injunctive relief, prohibiting Herchman from disclosing "confidential" materials. In so moving, Sun claims that Herchman has possession of and has used confidential information to Sun's detriment.

At the hearing, counsel repeatedly alluded to "confidential information" as did Sun's witnesses, without any explanation of same. At one point, after the hearing had begun, some four to five boxes, stand-

---

7. Even this issue is gravely doubtful, in light of the evidence before the court. The testimony is that in 1988, Herchman sold in excess of $800,-000, while in 1989 (to date), Sun's sales dipped to some $300,000 in Oklahoma. As noted, there is no evidence to attribute this drop to any *wrongful* conduct by Herchman. Indeed, Herchman left Sun's employ on August 7, 1989, thus had far less than a full year to work. Given the abundant evidentiary vacuum, as to (1) Herchman's wrongdoing and (2) the cause of Sun's drop in sales (no evidence was offered other than speculation), the actual likelihood of any money recovery, should such be sought against Herchman, is highly questionable. Furthermore, Sun's counterclaim seeks no such damages.

ing approximately four-plus feet high were wheeled into the courtroom. Just before the noon break, counsel indicated that the boxes contained "confidential documents". When asked if he knew what they were, counsel replied in the negative, advising the court that he had never seen them before, nor, reviewed same with his client.

When finally confronted with the documents by Sun's counsel, Herchman testified that he was unfamiliar with any of them. He testified that he had none of the manuals in his possession. In fact, the manuals were laser technical manuals, published by Sharplan (a laser manufacturer), for various models of medical lasers. Sun offered no testimony to the contrary, nor did it show that Herchman had the manuals or used them with LSSI.

Sun also made many references to a "customer list", supposedly containing not only the names of customers, but details of sales. *At no time, however, did Sun ever produce the "customer list" for the court, or, show same to Herchman during the hearing.* On direct examination by Sun, Herchman denied having the "customer list". Sun produced no evidence to the contrary.

Perhaps more important, was the testimony by Sun's officers that lists of medical laser "customers" were routinely given to *prospective buyers* of medical lasers; evidently to enable would-be purchasers to call other buyers to discuss the quality of the product. Such lists were freely available to all takers at medical laser seminars. The only testimony of confidential "customer lists" from Sun's officers, was of a time at the outset of Herchman's employ (in 1986), when Sun's corporate secretary had to "tear apart" the computer printout to separate Oklahoma "customers", from "customers" in other states. No testimony was subsequently offered as to *when* this list was actually sent; nor did any witness testify that Herchman was ever seen to have or use the list after he left Sun's employ. Indeed, Sun's testimony of Herchman's activities while acting as a salesperson for LSSI does not otherwise indicate that Sun "customers" were being solicited,

or, that Sun's business was being interrupted or interfered with.

In sum, Sun wholly failed to demonstrate that Herchman had any "confidential" information, much less, what such information might be; or, that it suffered or was suffering, irreparable injury as a result.

### 4. CONCLUSION

Sun seeks a preliminary injunction in its *Counterclaim* against Plaintiff, Herchman. It has, as a matter of law, the burden of demonstrating entitlement to injunctive relief. To reach this question, the court must necessarily determine whether the "Covenant Not to Compete", which Sun seeks to enforce, is, as a matter of law, enforceable. A finding that the non-competition clause is unenforceable precludes the award of injunctive relief; and, as a practical matter, resolves the underlying declaratory judgment action, originally brought by Plaintiff.

Upon review, as set forth in detail above, the United States Magistrate finds that the "Covenant Not to Compete" is, as a matter of law, unenforceable. For this reason, the Magistrate also recommends that the hearing on Sun's *Motion for Preliminary Injunction* be consolidated, per Rule 65, Fed. R.Civ.P., with the trial, and that the court thereby dispose of the entirety of the action.

Even if the court were to find that the clause is enforceable, the undersigned finds that Sun wholly failed to carry its burden insofar as any entitlement to injunctive relief. Sun proved no facts to show irreparable injury by reason of Herchman's activities. Neither did Sun show possession of or use by Herchman of any "confidential documents". At best, Sun showed that it employed Herchman for three years during which time he was one of their best salespersons. Herchman gained knowledge of medical lasers, and, particularly, the Oklahoma medical community by reason of his sales activity. In selling lasers he became acquainted with many physicians across the state. Herchman is now promoting a rental (as opposed to sales) program on behalf of LSSI, a company formed by Plaintiff just before he left Sun's employ.

Nothing, however, in Sun's testimony or evidence indicated any wrongdoing or impropriety by Herchman. Sun failed to demonstrate solicitation of any of its "customers" (i.e.: persons or entities to whom it had previously sold lasers); nor was it able to show any interference in its own on-going sales activities. Its witnesses offered the general supposition that "rentals will hurt sales"; all the while knowing that three or four other competitors existed in the Oklahoma market.[8]

The United States Magistrate concludes, and recommends, that Sun's *Motion for Preliminary Injunction* be denied, and, furthermore, that judgment be entered for Plaintiff on his declaratory judgment action, per the operation of Rule 65, Fed.R. Civ.P.

Pursuant to Local Rule 32(D), parties are given ten (10) days from the above filing date to file any objections with supporting brief.

Dated this 13th day of December, 1989.

---

**8.** Of further interest, is the fact that before Herchman left Sun's employ, Sun unilaterally "amended" his contract, removing from his territory certain geographic areas in Oklahoma, and, limiting his sales activity in certain hospital departments (i.e.: the "neo-natal department").